```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF SOUTH CAROLINA
                        ANDERSON DIVISION
```

| | | |
|---|---|---|
| DANIEL WORDEN, | ) | C/A No.: 8:06-cv-1074-GRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | (Written Opinion) |
| SUNTRUST BANKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on remand from the Fourth Circuit Court of Appeals. On December 19, 2008, the Fourth Circuit issued an Order remanding the case for a determination of whether SunTrust "used" or referred to the results of the polygraph test in violation of 29 U.S.C. § 2002(2). *Worden v. SunTrust Banks*, *Inc.*, 549 F.3d 334, 347 (4th Cir. 2008). On March 5, 2009, this Court issued an Order directing the parties that they had twenty (20) days to file any motions relating to the Fourth Circuit's opinion. Both parties filed motions for summary judgement on March 25, 2009. Both parties responded on April 13, 2009.

### Factual Background

This case involves an attempted bank robbery that took place on August 11, 2005 at the SunTrust bank branch where Plaintiff was employed. Plaintiff contends that he was confronted by masked intruders when he arrived home the evening of August 10, 2005. He stated that he, his roommate, and his roommate's wife (Gary and Anna Tyas) were bound, blindfolded, and held hostage all night and that the

kidnappers used him in an attempt to extort money from the bank when it opened the next morning. The robbery attempt failed, however, when the bank employees called the police. (Worden Dep. Ex. 6).

The City of Anderson Police Department investigated the alleged kidnapping, and the Federal Bureau of Investigation ("FBI") investigated the attempted bank robbery. Almost immediately, law enforcement and SunTrust became suspicious of Plaintiff's possible involvement in the alleged kidnapping and attempted bank robbery. (Brock Dep. 35).

Defendant employed Plaintiff most recently as an Assistant Manager at a bank branch in Anderson, South Carolina. (Worden Dep. I 71-72; Ex. 3). Kevin Brock ("Brock") was the Area Manager responsible for Plaintiff's branch. Brock reported to Kent Dill ("Dill"), the Retail Line of Business Manager, and Dill reported to Charles Perry ("Perry"), the President & CEO of Defendant's South Carolina Region. (Brock Dep. 10; Perry Dep. 9).

At Plaintiff's request, Brock and Loretta Rohrer-Norris ("Rohrer-Norris"), SunTrust's Regional Security Manager, went to the police department to meet with Plaintiff. (Worden Dep. II 9-10; Brock Dep. 17-18, 28; Rohrer-Norris Dep. 4). At some point during the afternoon, Brock learned from the police that there were inconsistencies between Plaintiff's statement and the statements that the Tyases had provided. (Brock Dep. 37). The police told Brock that Plaintiff had previously been suspected of stealing from a former employer in Anderson. (Brock Dep. 37, 51). The

police further advised Brock that they considered Plaintiff to be a suspect in the alleged kidnapping and attempted bank robbery. (Brock Dep. 37).

John Zamberlin ("Zamberlin"), the police investigator assigned to the case, asked Plaintiff if he was willing to take a polygraph, and Plaintiff said that he would consent. (Worden Dep. II 15). SunTrust was not present during Zamberlin's interview with Plaintiff and had no prior knowledge that Zamberlin intended to ask Plaintiff to consent to a polygraph. (Zamberlin Aff.). The request that Plaintiff submit to and the administration of the polygraph examination was made by the police alone. (Brock Dep. 24-25).

The polygraph examination was administered at approximately 11:00 p.m. (Worden Dep. II 21). SunTrust was not present for, and did not witness or observe, this examination. (Brock Dep. 30-31). After the examination, the polygrapher walked into the squad room, where Brock and Rohrer-Norris had been sitting off and on since they arrived at the police station earlier that evening, and announced without request and within everyone's earshot, that Plaintiff had failed the polygraph examination and that he believed Plaintiff was involved in the incident. (Brock Dep. 32, 44, 88-89; Rohrer-Norris Dep. 44-47). The polygrapher added, however, that he felt a defense attorney could challenge the results as inconclusive because of Plaintiff's lack of sleep and having allegedly experienced a traumatic event. (Brock Dep. 32). SunTrust never saw or received the polygrapher's report of this examination. (Brock Dep. 45, 50, 72; Rohrer-Norris Dep. 51-52).

On or about August 17, 2005, Zamberlin transported Plaintiff to Greenville, South Carolina where he was interrogated and agreed to submit to a polygraph examination by the FBI. (Worden Dep. II 39-40). No SunTrust personnel were present for this examination, and SunTrust did not request that Plaintiff submit to the polygraph examination. (Worden Dep. II 41-42; Brock Dep. 58; Rohrer-Norris Dep. 24-25). The request that Plaintiff submit to and the administration of the polygraph examination was made by law enforcement alone. (Brock Dep. 57). The FBI Agent that administered the polygraph examination advised Plaintiff that the results showed deception; the FBI also told him that he was considered a suspect. (Worden Dep. II 44-45, 48). Plaintiff was also told by the City of Anderson police that he had failed the test. (Worden Dep. II. 45).

At the conclusion of the FBI interrogation, Zamberlin called Brock and asked if he could transport Plaintiff back to Anderson. (Worden Dep. II 48-49; Brock Dep. 58). Although Brock did not ask, Zamberlin advised him that Plaintiff had "failed miserably" the polygraph examination administered by the FBI. (Brock Dep. 59, 66-67). When Brock arrived, Plaintiff also told him that he had failed the polygraph examination. (Worden Dep. II 49; Brock Dep. 67). Rohrer-Norris was also advised by an FBI Agent that Plaintiff had failed this polygraph examination. (Rohrer-Norris Dep. 24). Neither Brock nor Rohrer-Norris requested information regarding Plaintiff's polygraph examinations; law enforcement and Plaintiff simply advised them of the results unilaterally. (Rohrer-Norris Dep. 24; Brock Dep. 59, 66-67; Worden Dep. II 49).

During the course of the police investigation, Brock and Rohrer-Norris were kept apprised of the developments by the police and/or FBI.  (See Brock Dep. 22-23, 37, 55, 75, 119; Rohrer-Norris Dep. 24).  Because the situation involved state and federal crimes, Brock and Rohrer-Norris relied on law enforcement to investigate the crimes, as opposed to conducting their own investigation.  (Rohrer-Norris Dep. 31, 35, 55-56; Brock Dep. 52).  They both reported the information they obtained to Dill and/or Perry. (See Brock Dep. 18, 45, 52-53, 60, 103, 131; Perry Dep. 6, 12-14, 43-44; Dill Dep. 17, 29).  Dill and Perry were informed of the results of both polygraph examinations, as well as all of the other information obtained from the police relating to the suspicion that Plaintiff was involved in the crime.  (Brock Dep. 52-53, 60; Perry Dep. 14-15; Dill Dep. 17-18; Rohrer-Norris Dep. 50).

Perry and Dill made the decision to terminate Plaintiff's employment.  (Perry Dep. 15-16, 24; Dill Dep. 15).  Dill and Perry did not discuss the polygraph results in concluding that Plaintiff should be discharged.  (Dill Dep. 27-28, 53-54).  They based their decision on the unresolved suspicion, both SunTrust's and law enforcement's, that Plaintiff was involved in the attempted bank robbery on August 11, 2005.  (Perry Dep. 17, 42-43; Dill Dep. 37, 53).  It is undisputed that this suspicion, and SunTrust's decision, were supported by substantial circumstantial evidence.

Based on the totality and cumulative effect of all of the circumstantial evidence pointing to Plaintiff's involvement in the crime, Perry and Dill made the decision to terminate Plaintiff's employment.  (Perry Dep. 24, 42; Dill Dep. 19, 26-27).  On

September 1, 2005, Brock met with Plaintiff and advised him that his employment was terminated. (Worden Dep. II 80). Brock did not mention the results of the polygraph examinations during the termination meeting. (Worden Dep. II 82-83).

Plaintiff later filed a claim for unemployment benefits with the South Carolina Employment Security Commission ("ESC"). (Worden Dep. II 82). In the paperwork for this claim, Plaintiff acknowledged that he was considered a suspect by the police. (Worden Dep. Ex. 10). Plaintiff contends that Brock testified at the ESC hearing that Plaintiff was terminated because of the results of the polygraph examinations. (Worden Dep. II 82).

## Procedural History

In its motion for summary judgement, this Court made three findings. First, the Court determined that SunTrust did not discharge the plaintiff on the basis of the polygraph examinations. Second, the Court determined that SunTrust did not use, accept, or refer to the results of the plaintiff's polygraph examinations in violation of § 2002(2). On appeal, the Fourth Circuit upheld the Courts finding that the plaintiff was not discharged on the basis of his polygraph examination. *Worden*, 549 F.3d at 343. Additionally, the Court of Appeals affirmed this Court's determination that SunTrust had not "accepted" the polygraph results under § 2002(2). *Id.* at 344. However, the Court of Appeals also held that this Court's decision failed to recognize that a statutory cause of action under § 2002(2) was distinct from a cause of action under § 2002(3). *Id.* at 346-47. Accordingly, the Court of Appeals reversed the grant

of summary judgment with respect to the "use" and "refer to" portions of Worden's § 2002(2) claim and remanded the case for an evaluation of whether SunTrust "use[d]" or "refer[red to]" the polygraph results in violation of § 2002(2).  *Id.*

## SUMMARY JUDGEMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence affects the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  If there is a genuine issue of material fact, inferences relating to these facts must be drawn in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Once the movant has made this threshold demonstration, the non-moving party must demonstrate that

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

## **DISCUSSION**

Upon remand, this Court must interpret and apply the "use" and "refer" prongs of § 2002(2). Section § 2002 makes it illegal to "to use . . . [or] refer to . . . the results of any lie detector test of any employee or prospective employee." "[I]n the absence of a definition from Congress in a statute, or a clear congressional intent to the contrary, we accord words in a statute their "ordinary, contemporary, common meaning." *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 345 (4th Cir. 2008) (quoting *Walters v. Metropolitan Educ. Enter., Inc.*, 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (internal citations omitted). In defining these terms, the Fourth Circuit noted:

> "Use" is a broad term. In the context of the EPPA, it appears to mean "to put into practice" or "to employ." *Webster's Third New Int'l Dictionary* 2523-24 (2002. As to Worden's claim that SunTrust "refer[red] to" the polygraph results in violation of the EPPA, "refer" may be defined as "to direct attention to [or] allude." *Id.* at 1907.

Based on a plain meaning of this statute it appears that the defendant used and

referred to the polygraph results in violation of § 2002(2).  The defendant does not contest that the plaintiff's polygraph failure was discussed amongst her superiors and other security personal.  Instead, the defendant argues that the plaintiff suffered no damages as a result of the use and reference to these polygraph examinations.  This Court agrees.

The defendant argues that there are both economic and non-economic damages in this case.  In his affidavit, the plaintiff notes that he was driven to see a mental health professional, and suffered "stress, uncertainty, frustration, extreme worry after Defendant learned the polygraph results."   (Pl. Opp'n, to Def.'s Mot. Summ. J. 2-4). The defendant also argues that "[h]e was embarrassed, disappointed, humiliated, and destroyed to know that Defendant knew the results of the polygraph exams. He had trouble sleeping and recalls lying awake worrying about what Defendant would do in light of the polygraph results." *Id.*

This Court has already held, and the Fourth Circuit has affirmed, that the plaintiff was not discharged on the basis of his polygraph examinations.  As, as no nexus exists between the polygraph examination and the firing of the plaintiff, the plaintiff is not entitled to damages which may have resulted from the termination of his employment.

No material fact exists demonstrating that any damages resulted from the defendant's use or reference to his polygraph examination.  There exists a substantial difference between the "knowing" of polygraph results and using or referencing them.

In its plain terms "knowing" means "Possessing knowledge, intelligence of comprehension." *Webster's II New Riverside University Dictionary* 669 (1984). "Knowing" requires only possession or cognizance of a piece of information whereas the terms "use" and "refer to" require an additional step of employment of the or direction to this information. Accordingly, damages based on "use" or "reference to" a polygraph are not recoverable by a mere showing that the defendant's knowledge of the results caused a harm, particularly when the plaintiff informed them of the results. Instead, to recover under this provision of § 2002(2) the plaintiff must be able to demonstrate a nexus between the purported harm and the defendant's use or reference to the polygraph examination.

In this instance, there is no material fact establishing this nexus. At best, the plaintiff is alleging that the defendant's knowledge of the results of his polygraph caused him harm and anxiety.[1] As previously discussed, mere knowledge of his polygraph results is insufficient to recover § 2002(2). This Court is unable to find anything in the record which a reasonable juror could use to support a finding that damages resulted from the use or reference to the polygraph examination. Accordingly, the defendant is entitled to a grant of summary judgement.

---

[1]This should not be read to imply that non-economic damages are or are not recoverable under § 2002(2) as this Court expressly chooses not to rule on this matter. A ruling on this matter is unnecessary as there is no evidence of a link between the an injury and the defendants use or reference to the polygraph examination.

## **CONCLUSION**

Based on the foregoing, the plaintiff's motion for Summary Judgement is DENIED, and the Defendant's motion for Summary Judgement is Granted.

IT IS SO ORDERED.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina

April 16 , 2009